**United States District Court for the District of Maryland**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **Crim. No. 1:19-cr-00082-GLR-3** |
| **Mitchell, et al.**<br>  **[Joenna Marie Nicewarner]** | * | |

**Defendant Joenna Nicewarner's Motion for Leave, Sentencing Memorandum, Motion for Downward Variance, Incorporated Memorandum of Law in Support of Motion for Downward Variance, Motion for Credit, and Request for Recommendations to Bureau of Prisons**

Table of Contents

Motion for Leave ............................................................................. 1

Sentencing Memorandum ............................................................. 2

Motion for Downward Variance ................................................... 9

Memorandum of Law in Support of Motion for Downward Variance ..................... 10

Motion for Credit ........................................................................... 26

Request for Recommendations .................................................... 27

Points and Authorities .................................................................. 27

Certificate of Service ..................................................................... 29

Appendix ........................................................................................

**Motion for Leave**

Defendant's counsel moves for leave of the Court to file a Sentencing Memorandum on behalf of Joenna Nicewarner.  Fed. R. Crim. P. 47, Loc. R. 105(6), In support, counsel states the sentencing hearing for August 9, 2021 was scheduled on August 3, 2021.

### Sentencing Memorandum

Introduction

Joenna is a fallen woman.

Her dad Richard Nicewarner was a bricklayer, and her mom Carissa became a Registered Nurse.  Doc. 133 at ¶ 40.  Although not wealthy, the Nicewarner's needs were met.  Ibid.

Unfortunately, Joenna's parents drank, which led them to argue and to the police being called.  Id. at ¶ 41.  Her older brother Rich says that alcoholism, addiction, and mental illness run in their family.  App'x at 1.  When Joenna was five or six, their dad was hit by a car while crossing the street and suffered severe brain injuries.  Doc. 133 at ¶ 41.  He was in rehab facilities for about two years.  Ibid.  Rich says their dad has required round the clock care ever since.  App'x at 1.

During the summer that Joenna was seven, an aunt whom she was staying sexually abused her several times.  Doc. 133 at ¶ 43.

A few years later, the Nicewarners divorced.  Doc. 133 at ¶ 42.  Carissa continued drinking, met Kevin Houck at a bar, quickly married him, and they had Joenna's brother Sean.  Id. at ¶¶ 42, 47.

Joenna's stepfather was also an alcoholic, which led to frequent altercations between him and her mother.  Id. at ¶ 42.  At thirteen, Joenna began smoking marijuana, and she tried LSD and psilocybin.  Id. at ¶ 59.

Joenna remembers that when she was about fourteen, her stepfather broke her mother's jaw and orbital socket.  Id. at ¶ 42.  Her stepfather and mother verbally abused Rich, Joenna, and Sean.  Id. at ¶¶ 42, 47.

When Joenna was eighteen, she moved out and began using cocaine. Id. at ¶¶ 44, 60. Still, she graduated from Williamsport High School and attained her Associate's Degree in Nursing. Id. at ¶¶ 64 – 65. Her mother and stepfather divorced. Id. at ¶ 44. A couple of years later, Carissa stopped drinking, and Kevin Houck was diagnosed with leukemia. Ibid. Although Carissa took him back in while he was undergoing chemotherapy, they have remained together for the past ten years. Ibid.

On the property Carissa owns, she, Kevin Houck, and Sean live in one house. Id. at ¶¶ 46 – 47. Rich, Joenna, and their dad Richard live in the other, where Rich and Joenna take care of him. Ibid. Rich says: "Joenna has always been a caretaker." App'x at 1.

Joenna worked as a bartender "on and off" at Red Lobster for about ten years from the time she was 15, and she administered flu shots and public immunizations for about a year in 2009. Doc. 133 at ¶¶ 70 – 73. She also worked for Estate Buyers Group for three years, traveling around Maryland and surrounding states buying gold and coins. Ibid.

Unfortunately, more than ten years ago, Joenna was in a car accident and injured her back. Id. at ¶ 51. She went to physical therapy, saw a chiropractor, and participated in pain management. Ibid. Joenna was prescribed Percocet, and when she was no longer able to obtain a prescription, she began using heroin. Id. at ¶ 61.

She has participated in a methadone maintenance program "on and off" since 2017, and she currently prescribed Methadone to cope with her opiate addiction. Id. at ¶¶ 62 – 63.

Rich says Joenna has struggled with opiate addiction since 2013 or 2014. Id. at ¶ 65. He believes it began when she was prescribed pain medication for her back following her car accident. Ibid. Although she was participating in a Methadone treatment program, she might have still been using opiates. Ibid. She her addiction pretty well, so he was never sure when she was actively using. Ibid.

Today, Joenna has been incarcerated for two and a half years. Id. at p. 1. Rich takes care of their dad Richard and Joenna's four-year-old daughter S.F.S. App'x at 1 − 3.

Joenna has been diagnosed with hypothyroidism and anxiety. Doc. 133 at ¶¶ 50, 52. Rich does not believe that Joenna has ever participated in mental health treatment or been diagnosed with a mental health condition. Id. at ¶ 54. However, he believes that she needs mental health treatment. Ibid. He suffers from Post Traumatic Stress Disorder due to their dad's accident and believes Joenna might too. Ibid. He also believes that Joenna ended up self-medicating. Ibid.

She has been participating in various programs, earning Certificates and serving as a role model. App'x at 4 − 14.

Joenna is interested in receiving a mental health evaluation and is motivated to participate in any treatment to maintain her sobriety. Doc. 133 at ¶¶ 63 − 64; App'x at 15 − 17. She hopes to redeem herself, to be a mother to S.F.S., a sister to Rich and Sean, and a daughter to her parents.

Considering:

1.     That Joenna has a minor child and a disabled father, who depend on her;

2.     Joenna's demonstrated willingness to work, despite trauma and hardship;

3.     her health;

4.     That she has struggled with addiction;

5.     That she does not have a violent criminal record;

6.     That this offense was not violent;

7.     That these 900 days are the longest confinement that a court has imposed on Joenna, and also the longest that she has been away from her child;

8.     Joenna's age;

9.     After the COVID-19 pandemic hit, much of the time has been in solitary confinement;  *see*  https://www.washingtonpost.com/dc-md-va/2021/04/23/dc-jail-covid-lockdown-officials/ (Last accessed June 28, 2021); and

For such other reasons as might be raised during the sentencing hearing, twenty-nine months with credit for time served in custody since February 21, 2019 is sufficient, but not greater than necessary to comply with the purposes of the law. In short, it would serve no purpose that has not already been achieved.

Application of the Statutory Sentencing Factors to the Facts of this Case

Pursuant to Title 18, United States Code, Section 3553(a), the Court must consider the following factors when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant:

   (a)    Nature and Circumstances of Offense:

Joenna pled guilty to a drug conspiracy.  21 U.S.C. § 846.

   (b)    History and Characteristics of Joenna Nicewarner:

*See* Introduction to Sentencing Memorandum, *supra* at 2 – 5.

2.    The Need for the Sentence Imposed To Promote Certain Statutory Objectives:

   (A)    To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

While there is legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law, if the law is merely a means to dispense harsh punishment without considering the real conduct and circumstances involved, then the law promotes derision instead of respect.  *Gall v. United States*, 128 S. Ct. 586, 600 (2007).

   (B)    To afford adequate deterrence to criminal conduct;

   (C)    To protect the public from further crimes of the defendant; and

   (D)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.      The Kinds of Sentences Available

The Supreme Court severed and excised Title 18, United States Code, Section 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). This renders the sentencing guidelines advisory. *Id*. Title 21, United States Code, Section 841(b)(1)(A), Title 18, United States Code, Sections, 3551, 3553, 3559, 3561, 3571, 3581, and 3583 specify what types of sentences may be imposed for this offense.

The Presentence Report accurately states the statutory penalties.  Doc. 133.

4.      The Kinds of Sentence and the Sentencing Range Established by
        the Sentencing Commission

Likewise, the Presentence Report accurately states the Guidelines calculation. Doc. 133.

Supervised Release

Supervised release is required when a statute requires it, or when the Court imposes a term of imprisonment of more than one year. U.S.S.G. § 5D1.1(a).  In this case the guideline range for a term of supervised release is five years. U.S.S.G. § 5D1.2(c).

Fine

The Court does not have to impose a fine, when the defendant demonstrates that she is not able to pay, and she is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a).  The fine range would be from $30,000.00 to $10,000,000.00.

U.S.S.G. § 5E1.2(c)(3), (4).  However, Joenna is: i) indigent (Doc's 15, 26), ii) facing imprisonment, iii) the mother of a minor child, and iv) the Presentence Report not recommend one.  Doc. 133 at p. 18.  Accordingly, Joenna requests that the Court waive the imposition of a fine.  U.S.S.G. § 5E1.2(e).

5.    Any Pertinent Policy Statement

Policy Statements regarding: Mental and Emotional Conditions (U.S.S.G. § 5H1.3), Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction (U.S.S.G. § 5H1.4), Family Ties and Responsibilities (U.S.S.G. § 5H1.6), and Lack of Guidance as a Youth and Similar Circumstances (U.S.S.G. § 5H1.12) might be relevant.

6.    The Need to Avoid Unwarranted Disparities

Although the guidelines were intended to reduce unwarranted sentencing disparity across the country between similarly situated defendants, there are some guidelines which, as the Sentencing Commission itself has noted, increase disparity. For example, despite the Fair Sentencing Act, cocaine base continues to be punished 18 times more severely than powder cocaine.

7.    The Need to Provide Restitution to Any Victims of the Offense

There are no victims.

Proposed "Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)" for Sentence below Guideline Range

Considering that Joenna has a minor child and a disabled father, who depend on her, that her offense was not violent, her demonstrated willingness to work,

despite trauma and hardship, that she has struggled with addiction, her health, the harsh conditions of confinement during the COVID-19 pandemic, that these 900 days are the longest confinement that a court has imposed on Joenna, and also the longest that she has been away from her child and that incarceration for $121 - 151$ months would cost approximately \$377,641.00 to \$471,271.00, a lengthy period of incarceration would be more than is necessary to comply with the directives in 18 U.S.C. § 3553(a).  In short, it would serve no purpose that has not already been achieved.

### Motion for Downward Variance

Pursuant to *Gall v. United States*, 128 S. Ct. 586, 600 (2007); *Kimbrough v. United States* 128 S. Ct. 558 (2007); *Rita v. United States*, 127 S. Ct. 2456 (2007); defendant Joenna Nicewarner moves for a variance from the guideline range established by the U.S. Sentencing Commission. In support, defendant states that the Court should consider:

10.    Criminal history category over-represents the seriousness of past criminal conduct and exaggerates a defendant's propensity to commit crimes;

11.    Deficiencies of imprisonment:

      a.    A longer sentence would impair defendant's rehabilitation;

      b.    Departure proper to permit more community confinement in lieu of prison;

12.    Post-offense, post-conviction, and post-sentencing rehabilitation;

13.    Effect of imprisonment on third parties:

       a.     Extraordinary family circumstances or where incarceration would have harsh effect on innocent family members;

       b.     Cost to taxpayers of lengthy incarceration;

14.    Disadvantaged childhood, victimization, lack of guidance as a youth;

15.    Drug rehabilitation reduces recidivism;

16.    Defendant already punished by other events:

       a.     Harshness of pretrial or presentence confinement; and

       b.     Defendant had extraordinary punishment not contemplated by guidelines.

## Memorandum of Law in Support of Motion for Downward Variance

### Introduction

The departure authority within the Guidelines Manual provides a preliminary basis for  sentences below the Guidelines, but neither counsel nor the Court fulfill their obligations by  considering departures alone.  Counsel must show, and the District Court must consider, all  reasons why a Guideline sentence "fails to properly reflect Section 3553(a) considerations, or  perhaps [that] the case warrants a different sentence regardless." *Rita v. United States,* 127 S. Ct. 2456 at 2456 (2007).  The District  Court cannot presume that the Guidelines range applies to any particular case. *Id.* Counsel's  duty extends to challenging the imposition of a Guidelines range sentence by all arguments  available, including Guidelines departures.  There is essentially no limit on the potential factors  that may warrant a departure or non-Guidelines sentence.

Sentencing Pursuant to *Booker*

In *United States v. Booker*, 125 S. Ct. 738, 756 (2005) the Supreme Court held that provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), conflicted with the Sixth Amendment. *Booker*, 125 S. Ct. at 756. Accordingly, the Court severed and excised the mandatory provisions, "mak[ing] the Guidelines effectively advisory." *Id*. at 757. Instead of binding a sentencing court, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp.2004). It also permits the Court to tailor the sentence in light of other statutory concerns as well, *see* § 3553(a). *Booker*, 125 S. Ct. at 757. According to *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1));

2) "the kinds of sentences available" (§ 3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7)).

Other statutory sections also give the District Court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

The Supreme Court has held that a court may not impose or lengthen a prison term in order to foster a defendant's rehabilitation. *Tapia v. United States*, 564 U.S. 319 (2011) (reversal, because district court lengthened defendant's sentence so she could participate in a residential drug abuse program).

"***No limitation*** shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). 18 U.S.C. § 3661. This statutory language certainly overrides the (now-

advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  *See* U.S.S.G. § 5H1.12; *see also United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); *United States v. Naylor*, F. Supp. 2d , 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in *Roper v. Simmons*, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of *Booker* and § 3553(a) make clear that Courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing Courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore."  *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19,

2005) (Adelman, J.).   As Judge Gertner has observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*."  *United States v. Jaber*, 362 F. Supp. 2d 365 (D. Mass., 2005) (Gertner, J.).  *See also United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), *reh'g en banc granted*, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from *Booker's* remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so.

*Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so.  The remedial majority understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing Court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.  When the guidelines conflict with other sentencing factors set forth in § 3553(a), the statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi*, 892 F.2d 269,

276-77 (3rd Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

Supervised Release Involves Significant Restraints on a Defendant's Liberty.

Orders confine defendants to a particular community, house, and job at the sufferance of the probation officer. *Jones v. Cunningham*, 371 US 236, 242 (1963); *See also Anderson v. Corall*, 263 U. S. 193, 196 (1923) ("While [parole] is an amelioration of punishment, it is in legal effect imprisonment."); von Hentig, *Degrees of Parole Violation and Graded Remedial Measures*, 33 J. Crim. L. & Criminology 363 (1943).

Defendants must periodically report to the probation officer, permit the officer to visit their homes and jobs at any time, and follow the officer's advice. *Jones* at 242. Defendants are admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live clean, honest, and temperate lives. *Id*. Not only must they faithfully obey these restrictions and conditions, but they also live in constant fear that a single deviation, however slight, might result in being sent to prison. *Id*.

Defendants might be rearrested any time the probation officer only believes they have violated a term or condition of supervised release. *Id*. They might have to serve all of the time that was suspended with few, if any, of the procedural safeguards that normally must be provided to those charged with crime. *Id*. Supervised release

significantly restrains defendants' liberty to do the things that free people in this country are entitled to do.  *Id*.

### Criminal History Category Over-Represents the Seriousness of Past Criminal Conduct and Exaggerates a Defendant's Propensity to Commit Crimes

Federal courts have granted downward variances, recognizing that criminal history category over-represents the seriousness of past criminal conduct and exaggerates a defendant's propensity to commit crimes.

*United States v. Herrick,* 545 F.3d 53 (1st Cir.2008) (court granted departure from criminal history category IV to category III , concluding the defendant's criminal history category overstated the likelihood he would reoffend); *United States v. Mishoe*, 241 F.3d 214 (2nd Cir. 2001) (horizontal departure in criminal history category may be warranted where prior sentences were lenient).

*United States v. Jones*, 216 F. App'x 189 (3rd Cir. 2007) (departure granted for overstated criminal history prior to *Booker*).

*United States v. Thomas*, 361 F.3d 653 (D.C. Cir. 2004) (because arrests prove nothing, court erred in considering long arrest  record to justify denial of downward departure for over-represented criminal history), *vacated  and remanded in light of Booker*, 543 U.S. 1111 (2005).

*United States v.  Benkahla*, 501 F.Supp.2d 748 (E.D. Va. 2007) (Court departed downward under 4A1.3 for overstated criminal history.  Under the Guidelines, a terrorism enhancement applied which  automatically raised the criminal history to category VI regardless of the actual criminal history. The court concluded that it was not prevented from departing especially since *Benkahla* had no

criminal history.  The court set the criminal history category at I and sentenced him to the bottom of the Guidelines range.).

*United States v. Mapp*, 2007 WL 485513 (E.D. Mich. Feb. 9, 2007) (departure granted from advisory range of 84 - 105 months to 37 - 46 months where defendant's criminal history was overstated in that his last conviction occurred in 1994 and all his criminal history points accrued during a two year period in his late teens for crimes involving small amounts of drugs, court then varied to 30 months based on defendant's oppressed upbringing by abusive parents which led to his grandmother taking him from age five).

A Longer Sentence Impairs Rehabilitation.

Federal courts have granted variances after considering how a longer sentence would impair a defendant's rehabilitation.  *See Gall v. United States*, 128 S. Ct. 586, 593 (2007);

The District Court's finding that a man convicted of one count of child porn possession would not be adequately accommodated in prison and would be better served by outpatient psychiatric treatment, supported reasonableness of imposing five years' probation instead of a guideline term of 41 – 51 months. *United States v. Autrey*, 555 F.3d 864 (9th Cir. 2009).

*United States v. Handy*, 2008 WL 3049899 (E.D.N.Y. Aug. 4, 2008) (court imposes non-guideline sentence of 30 months for twenty year old felon-in-possession defendant whose life read like "a feeder system into the Cradle to Prison Pipeline," because educational and vocational training would be more effective if provided

outside prison and keeping him in prison would result in further hardening of him as a criminal and increase his danger to the community upon release).

*United States v. Collado*, 2008 WL 2329275 (S.D.N.Y. June 5, 2008) (court imposes time-served for charge of being a felon-in-possession of ammo defendant found inside a used van he bought because incarceration would threaten to undermine sentencing goals by halting or possibly reversing significant progress of defendant in the 15 years since his robbery conviction, during which he became a contributing member of society with a new business).

Departure Proper to Permit More Community Confinement in Lieu of Prison.

Application Note 6 to United States Sentencing Guidelines, Section 5C1.1 authorizes a departure that permits substitution of more community confinement than otherwise authorized for an equivalent number of months of imprisonment for treatment ("e.g. substitution of twelve months in residential drug treatment for twelve months of imprisonment"); *but see United States v. Malley*, 307 F.3d 1032 (9th Cir. 2002) (does not authorize reduction in the offense level).

Post-Offense, Post-Conviction, and Post-Sentencing Rehabilitation

Federal courts have granted departures and variances after considering whether a defendant had demonstrated rehabilitation. *Gall v. United States*, 128 S.Ct. 586, 593, 599 (2007). Post-offense rehabilitation should now be recognized as an appropriate mitigating circumstance. *United States v. Maier*, 975 F.2d 944, 945 (2nd Cir.1992) (affirming departure where defendant's "efforts toward rehabilitation followed an uneven course, not a surprising result for someone with a fourteen year

history of addiction").

*United States v. Newlon*, 212 F.3d 423 (8th Cir. 2000) (departure from 110 to  90 months for being felon in possession was not abuse of discretion where prior to arrest defendant had, at his own request, spent 85 hours in drug and alcohol program; his counselor attested to defendant's sincere desire for treatment, and defendant's family noted marked  improvement in his behavior and attitude).

*United States v. Green*, 152 F.3d 1202 (9th Cir. 1998) (post-  offense and post-sentencing rehabilitative efforts shown by exemplary conduct in prison  warranted eleven level downward departure to 30 days).

*United States v. Jones*, 158 F.3d 492 (10th Cir.  1998) (upholding downward departure  to  probation  for  defendant  in  weapon  possession  case  where  court considered, among 11 factors, defendant's adherence to conditions of his release and changed both his attitude and conduct during release).

*United States v. Samuels*,  2009 WL 875320 (S.D. N.Y. April 2, 2009) (time served  imposed  rather  than  guideline  range  of  70 - 87  for  young  defendant  who stopped selling and using crack on her own initiative two  months before her arrest, and who pursued GED, took up typing, had no write ups and led a  trusted cleaning crew allowed access to virtually all parts of correctional facility).

*United States v. Carvajal*, 2005  WL 476125 (S.D.N.Y. Feb.22, 2005) (The goal of rehabilitation "cannot be served if a defendant  can look forward to nothing beyond imprisonment.  Hope is the necessary condition of mankind . . . A judge should be hesitant before sentencing so severely that he destroys all hope and takes  away all

possibility of useful life. . . .").

*United States v. Parella*, 273 F. Supp. 2d 161 (D. Mass. 2003) (probation granted, rather than guideline range of 30 - 37 months, for getaway driver in three bank robberies, because defendant totally changed his life and his behavior and treatment succeeded in producing a rehabilitated person unlikely to recidivate).

*United States v. Wilkes*, 130 F. Supp. 2d 222 (D. Mass. 2001) (departing for defendant who obtained counseling, remained drug-free and re-established personal and family relationships after a decade of severe alcohol and drug abuse).

### Extraordinary Family Circumstances or When Incarceration Would Have Harsh Effect on Innocent Family Members

Guidelines Section 5H1.6 generally discourages departures on this basis. The PROTECT Act amendments of April 30, 2003 made family ties and responsibilities "not relevant" in child-victim, sex abuse and exploitation, obscenity offenses, and related crimes. *Booker* and *Rita* free courts to consider these factors as part of their analysis under section 3553(a).

Federal courts have granted variances after considering extraordinary family circumstances or the harsh effect of a defendant's incarceration on innocent family members. *United States v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008) (sentence of probation affirmed where justified by the atypical nature and circumstances of the felon in possession case and by the defendant's need to care for her nine year old developmentally disabled son).

*United States v. Boeka*, 2006 WL 3780400 (D. Neb. Dec. 20, 2006) (court imposed 12 months and one-day for bank robbery in which Cheez-Its were disguised

as a bomb, and government did not oppose departing based on extraordinary family circumstances where defendant gave primary care for disabled 11 year old who required constant help and defendant suffered from major depression and may have been considering suicide by police).

Cost to Taxpayers of Lengthy Incarceration.

Federal courts have granted variances after considering the cost of incarceration that taxpayers would have to bear. *United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence will probably cost taxpayers $836,000, and the defendant his life; guidelines range for nonviolent offenders drains billions from taxpayers and keeps potentially productive members of society locked up, causing staggering "opportunity costs").

The court noted that the cost of a mandatory 61-year-sentence would be $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime. *United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 2004).

The court noted that "the non-rehabilitation purposes of incarceration—retribution, deterrence and incapacitation—would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return." *United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993).

Disadvantaged Childhood, Victimization, Lack of Guidance as a Youth

The Sentencing Guidelines treat lack of guidance as a youth and

21

"circumstances indicating a disadvantaged upbringing" as forbidden departure grounds. U.S.S.G. §§ 5H1.12 and 5K2.0(d)(1). *Booker* and its progeny free district courts to consider these factors as part of their analysis under Section 3553(a).

Federal courts have granted variances after considering the defendant's personal history. *United States v. McBride*, 2007 WL 4555205 (11th Cir. Dec. 28, 2007) (finding non-guideline sentence of 84 months was sufficient but not greater than necessary district court based on Section 3553(a) factors, including the murder of defendant's father, severe physical abuse defendant suffered at the hands of mother and uncle, sexual abuse he suffered by grandfather, and having been shuffled between foster homes until adulthood).

The Court of Appeals remanded a sentencing, because the district court did not consider a departure from 51 month sentence imposed in drug case because defendant was exposed to domestic violence as a child, his mother's murder by stepfather, his need to leave town due to threats, and having grown up in slums of New York and Puerto Rico. *United States v. Lopez*, 938 F.2d 1293, 1297 – 99 (D.C. Cir. 1991).

A 96 months sentence was imposed instead of the guideline range of 140 – 175 months for crack offenses, in part due to defendant's difficult childhood with abusive mother and largely absent father, who was incarcerated and a heroin addict, and the absence of any prior substance abuse assistance. *United States v. Ruiz*, 2009 WL 636543 (S.D.N.Y., March 11, 2009).

A time served sentence was imposed instead of the guideline range of 70 – 87 months for young woman from abused background who was embarrassed by her drug

sales and did not tell her family though she sold them to support them. *United States v. Samuels*, 2009 WL 875320 (S.D.N.Y. April 2, 2009).

The court imposed a 30 month sentence instead of the guideline range of 37 – 46 months for 20 year old whose life story read like it came from "the feeder systems into the Cradle to Prison Pipeline" — abandoned as an infant, separated from siblings, raised by aunt in high crime area, shot on the street at age 12, left school and took up crime at age 14, spent the majority of his adolescence in prison, prosecuted for possessing a gun he found and believed to be inoperable in an environment where finding a gun on the street is like finding cash. *United States v. Handy*, 2008 WL 3049899 (E.D.N.Y. 2008).

The court imposed 120 months as a variance from the guideline term of 262 – 327 months for a mentally ill defendant's difficult childhood and life — delivered as an infant by his heroin addicted mother, abandoned by his father at age 4, resorted to drugs to overcome emotional trauma of his separation from his girlfriend and the mother of his children. *United States v. Santa*, 2008 WL 2065560 (E.D.N.Y. 2008).

The court departed 10 months from guideline range and imposed mandatory minimum, finding that defendant's lack of youthful guidance, and acceptance of responsibility indicate that the additional 10 months would serve no deterrent or retributive purpose to defendant or to general public. *United States v. Swift*, 2008 WL 2906884 (N.D. Ind., 2008).

The court imposed a 24 month sentence, because guideline range of 46 – 57 months for identity theft was greater than necessary given defendant's history and

characteristics and considering other Section 3553(a) factors. *United States v. Hunt*, 2007 WL 517494 (E.D.Va. Feb. 9, 2007). The defendant was thirty years old and was victim of violence as a child and teenager. *Id*. The court found that the seriousness of the offense  paled in comparison to the seriousness of what happened to defendant. *Id*. "Few persons have had a  more difficult childhood than Defendant." *Id*. She had also been imprisoned for ten years before she  was twenty years old whereas most youthful offenders receive suspended  sentences.

   *United States v. Mapp*, 2007 WL 485513 (E.D. Mich Feb. 9, 2007) (variance granted to 30  months after departing downward from advisory range of 84 – 105 months to 37 – 46 months for  overstated criminal history based on defendant's upbringing where his parents never married and  frequently physically abused each other.  He hid in closets or outside for hours and his grandmother took custody of him at age 5 and raised him.).

Drug Rehabilitation Reduces Recidivism

   Federal courts have granted variances after considering that the recidivism rate is less for offenders who participate in drug treatment. *United States v. Phinney,* 599 F. Supp. 2d 1037 (E.D. Wis., 2009)(based on the defendant's age,  lack of prior history, and progress in treatment programs thus far, district court concluded defendant was unlikely to re-offend and further. Court disagreed with the guidelines' approach  on possession pornography cases generally, and believed that defendant's treatment would be  better achieved in a community based program, and therefore sentenced the defendant to a  period of six months custody followed by ten years of

24

supervised release, despite that guidelines  called for a 37 – 46 month sentence).

The court observed that if drug addiction creates a propensity to crime, drug rehabilitation goes a  long way to preventing recidivism. *United States v. Perella*, 273 F.Supp.2d 162, 164 (D. Mass.  2003). Statistics suggest recidivism rate is less for drug offenders,  who receive treatment while in prison or jail, and still less for those treated outside of prison  setting. *Id.,* citing Lisa Rosenblum, *Mandating Effective Treatment for Drug Offenders,* 53 Hastings  L.J. 1217, 1220 (2002).

However, a court  may not  use  imprisonment to  promote  correction  and rehabilitation. 18 U.S.C. § 3582(a). The Supreme Court has held that a court may not impose or lengthen a prison term in order to foster a defendant's rehabilitation. *Tapia v. United States*, 564  U.S. 319 (2011) (reversal, because district court lengthened defendant's sentence so she could participate in a residential drug abuse program).

### Harshness of Pretrial or Presentence Confinement

Much of Joenna's time has been in solitary confinement at DC Jail, because that   is   how   officials   there   responded   to   the   pandemic.   *See* https://www.washingtonpost.com/dc-md-va/2021/04/23/dc-jail-covid-lockdown-officials/ (Last accessed June 28, 2021).  Federal courts have granted variances after considering the harshness of pretrial or presentence confinement.  *United States v. Carty*, 263 F.3d 191 (2nd Cir. 2001) (finding that defendant's pre-sentence confinement in Dominican Republic where conditions were bad may be a permissible basis for downward departure).

*United States v. Pressley*, 345 F.3d 1205 (11th Cir. 2003) (where defendant spent

six years in presentence confinement, including 5 years in 23 hour a day lockdown and where he had not been outside in 5 years, district court erred in holding that departure not available).

*United States v. Ortiz*, 2007 WL4208842 (D.N.J. Nov. 27, 2007) (The court varied from the Guidelines based on the horrible prison conditions where the defendant was being held.).

*United States v. Bakeas*, 987 F. Supp. 44, 50 (D. Mass. 1997) ("[A] downward departure is called for when, as here, an unusual factor makes the conditions of confinement contemplated by the guidelines either impossible to impose or inappropriate.").

### Motion for Credit

Defendant Joenna Nicewarner moves for credit for time already served in custody since February 18, 2019. In support, he states:

17.     She was arrested on February 21, 2019. Doc. 133 at p. 1.

18.     On March 7, 2019 the Court entered an Order of Detention. Doc. 27.

19.     She has spent time in official detention prior to the date the sentence commences—(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which he was arrested after the commission of the offense for which this sentence will be imposed. 18 U.S.C. § 3585(b)(1), (2).

20.     The time has not been credited against another sentence.

**Request for Recommendations to the Bureau of Prisons**

If the Court imposes a term of imprisonment, Joenna requests that the Court recommend to the Bureau of Prisons:

21.     designation to a facility with the R.D.A.P. program and as close as possible to Baltimore, such as F.P.C. Alderson, West Virginia.

22.     credit for time served in state custody pursuant to Section 3585(b)(1) and (2), and

23.     release to a community corrections facility or to home monitoring as soon as possible.

**Points and Authorities**

*Anderson v. Corall*, 263 U. S. 193 (1923).
*Gall v. United States*, 128 S. Ct. 586 (2007).
*Jones v. Cunningham*, 371 U.S. 236 (1963).
*Kimbrough v. United States* 128 S. Ct. 558 (2007).
*Rita v. United States*, 127 S. Ct. 2456 (2007).
*Roper v. Simmons*, 125 S. Ct. 1183 (2005).
*Tapia v. United States*, 564 U.S. 319 (2011).
*United States v. Ameline*, 400 F.3d 646 (9th Cir. 2005).
*United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 2004).
*United States v. Autrey*, 555 F.3d 864 (9th Cir. 2009).
*United States v. Bakeas*, 987 F. Supp. 44, 50 (D. Mass. 1997).
*United States v. Boeka*, 2006 WL 3780400 (D. Neb. Dec. 20, 2006).
*United States v. Booker*, 125 S. Ct. 738 (2005).
*United States v. Carvajal*, 2005  WL 476125 (S.D.N.Y. Feb. 22, 2005).
*United States v. Carty*, 263 F.3d 191 (2nd Cir. 2001).
*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000).
*United States v. Collado*, 2008 WL 2329275 (S.D.N.Y. June 5, 2008).
*United States v. Denardi*, 892 F.2d 269 (3rd Cir. 1989).
*United States v. Green*, 152 F.3d 1202 (9th Cir. 1998).
*United States v. Handy*, 2008 WL 3049899 (E.D.N.Y. Aug. 4, 2008).
*United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993).
*United States v. Hunt*,  2007 WL 517494 (E.D. Va. Feb. 9, 2007).
*United States v. Jaber*, 362 F. Supp. 2d 365 (D. Mass., 2005).

*United States v. Jones*, 158 F.3d 492 (10th Cir. 1998).

*United States v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008).

*United States v. Lopez*, 938 F.2d 1293 (D.C. Cir. 1991).

*United States v. Malley*, 307 F.3d 1032 (9th Cir. 2002).

*United States v. McBride*, 2007 WL 4555205 (11th Cir. Dec. 28, 2007).

*United States v. Naylor*, 2005 WL 525409, *2 (W.D. Va. Mar. 7, 2005).

*United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005).

*United States v. Perella*, 273 F.Supp.2d 162 (D. Mass. 2003).

*United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis., 2009).

*United States v. Pressley*, 345 F.3d 1205 (11th Cir. 2003).

*United States v. Ranum*, 353 F. Supp. 2d 984 (E.D. Wisc. Jan. 19, 2005).

*United States v. Ruiz*, 2009 WL 636543 (S.D.N.Y., Mar. 11, 2009).

*United States v. Samuels*, 2009 WL 875320 (S.D. N.Y. Apr. 2, 2009).

*United States v. Santa*, 2008 WL 2065560 (E.D.N.Y. 2008).

*United States v. Wilkes*, 130 F. Supp. 2d 222 (D. Mass. 2001).

U.S. Const. amend. VI.

18 U.S.C. § 3551.

18 U.S.C. § 3553.

18 U.S.C. § 3559.

18 U.S.C. § 3561.

18 U.S.C. § 3571.

18 U.S.C. § 3581.

18 U.S.C. § 3582.

18 U.S.C. § 3583.

18 U.S.C. § 3585.

18 U.S.C. § 3661.

21 U.S.C. § 846.

U.S. Sentencing Comm'n, *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines,* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004).

U.S.S.G. § 5C1.1.

U.S.S.G. § 5D1.1.

U.S.S.G. § 5D1.2.

U.S.S.G. § 5E1.2.

U.S.S.G. § 5H1.3.

U.S.S.G. § 5H1.4.

U.S.S.G. § 5H1.6.

U.S.S.G. § 5H1.12.

U.S.S.G. § 5K2.0.

von Hentig, *Degrees of Parole Violation and Graded Remedial Measures*, 33 J. Crim. L. & Criminology 363 (1943).

Lisa Rosenblum, *Mandating Effective Treatment for Drug Offenders,* 53 Hastings L.J. 1217 (2002).

*/s/ William L. Welch, III*

William L. Welch, III
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615–7186
Facsimile: (410) 630–7760
Counsel for Joenna Nicewarner
(Appointed by this Court)

### Certificate of Service

I hereby certify that on this 4th day of August 2021 a copy of the foregoing Motion for Leave, Sentencing Memorandum, Motion for Variance, Memorandum of Law, Motion for Credit, Request for Recommendations, and Appendix were delivered electronically to Ms. Paige Cameron (Paige_Cameron@mdp.uscourts.gov), U.S. Probation Office, 250 West Pratt Street, Suite 400, Baltimore, Maryland 21201, and they were delivered electronically to Ms. Samika N. Boyd (Samika.Boyd@usdoj.gov) and Mr. Christopher J. Romano (Christopher.Romano@usdoj.gov), Office of the United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201.

*/s/ William L. Welch, III*

William L. Welch, III